MARSH vs. WHITE & COOK.

The absolute owner of property, or an officer who has levied on it and is therefore a special owner, may maintain an action of trespass or trover, for an unlawful intermeddling with such property by a stranger.  And it is no defence, in the latter case, that there may be property enough remaining to satisfy the execution.  Per GRIDLEY, J.

Otherwise, however, when the suit is brought, not for a direct injury to the property itself, but to recover the consequential damages sustained by a judgment and execution creditor occasioned by the removal of property upon which he had acquired a lien by the levy of his execution.

Thus, where a judgment creditor sues an individual to whom the judgment debtor has transferred a part of the property levied upon by virtue of an execution, subsequent to the levy, for removing it, he must prove that he necessarily suffered damage by the act complained of: in other words, that there was not property enough left to satisfy his execution.

The plaintiff in an execution cannot sue a stranger for removing property levied on, where it appears that there was enough property left to satisfy the execution, and that the plaintiff has either released such residue, or lost his lien upon it by his own negligence.

Nor can a constable maintain an action against a stranger for taking away property levied on by him, after he has made a return upon the execution by which he, by order of the plaintiff, has formally released the levy.  Per GRIDLEY, J.

THIS was a special action on the case, tried at the Onondaga circuit in April, 1846, before WHITING, C. Judge.  The declaration set forth the recovery of a judgment by the plaintiff in this suit against one Cyrus Cowles before a justice of the peace, on the 17th of April, 1843, for the sum of $54,67, the issuing of an execution thereon, and a levy by the constable upon

Marsh v. White.

certain articles of personal property belonging to Cowles, and the endorsing of such levy upon the execution. The declaration then alleged that after such levy was made, and while the property remained bound thereby, the defendants rescued the said property out of the custody of the constable, and took and carried the same away and disposed thereof to their own use; by which the plaintiff was defeated, delayed and hindered in collecting the moneys due him upon the judgment and execution; and that such judgment still remained in full force and effect, not paid, satisfied, reversed or discharged. The defendants pleaded the general issue, and gave notice that they would give in evidence and insist upon for their defence, that if they took the property mentioned in the plaintiff's declaration, they took and disposed of the same by virtue of an assignment duly executed by the said Cyrus Cowles, of which a copy was set out, at length, in the notice. That such property was taken and disposed of by the defendants as assignees of Cowles, as directed and empowered by the assignment, and the avails thereof were applied towards the payment of the debts of the assignor in the assignment mentioned, in the manner therein directed. And that after the plaintiff had obtained his judgment against Cowles, and after the issuing and levy of the execution, the property was voluntarily released from the levy by the order and direction of the plaintiff. On the trial Josiah B. Butler was sworn as a witness for the plaintiff, and testified that in 1843 he was a constable of the town of Pompey, and as such received an execution in favor of Daniel Marsh (the plaintiff in this suit) against Cyrus Cowles, and on the 21st of April levied upon twenty-three sheep, one span of horses, one two-horse lumber wagon, and other property belonging to Cowles, and endorsed such levy on the back of the execution. That Marsh would not indemnify him, and by his order he did not remove the property. That he did not sell the property; that Marsh told him that he must give up the sale of the property, and that he need not trouble himself any more about it, but to return the execution. That accordingly on the 10th of July, 1843, he endorsed on the execution, below his former endorse-

ment of the levy, a return in these words: "The above levy released by plff.'s order. No other property to be found." This witness further stated that the amount due on the execution on the 10th of July, including his fees, was $57,76. That when the property was levied on, it was all on the farm occupied by Cowles. It appeared in evidence that the property levied on was more than enough to satisfy the plaintiff's execution; that a portion of such property was taken by the defendants and sold by them on the 10th of May, 1843, and the proceeds applied by them to the payment of other creditors of Cowles, but that there still remained sufficient property bound by the levy upon the plaintiff's execution to satisfy such execution. The defendants proved the execution of a general assignment to them by Cowles, of all his property, in trust for the payment of his debts, bearing date on the 23d of March, 1843. This assignment the plaintiff insisted was fraudulent and void, for several reasons not necessary to be mentioned; inasmuch as the court, without discussing the question, seems to have taken that fact for granted. The circuit judge charged the jury that in his opinion the assignment was void, on the ground that it gave the assignees the power of leasing the real estate; but that under the issue if the plaintiff did not prove that he had lost his debt by the interference of the defendants he did not make out his cause of action. That the question was whether the plaintiff was defeated in the collection of his debt, by such interference. That the property levied on was not exempt from execution under the exemption law of 1842, the debt of the plaintiff on which the judgment was recovered having been contracted previous to the passing of that act. That taking away a part of the property did not create a liability, under the circumstances, when there was enough besides to satisfy the debt. That if the plaintiff had sufficient property levied upon, not taken by the defendants, which he might have sold, had he not released it, it was a satisfaction of the execution. But whether there was sufficient property or not, and whether any of it was released, and whether the defendants' interference prevented the plaintiff from collecting his debt, was for the jury

to say.  The plaintiff's counsel excepted to this charge.  The jury rendered a verdict for the defendants; and upon a case the plaintiff now moved for a new trial.

*B. Davis Noxon & V. Birdseye*, for the plaintiff.

*S. L. Edwards*, for the defendants.

*By the Court*, GRIDLEY, J.   I. If this action can be sustained by the plaintiff, it is manifest that it is not on the ground that he is the *owner* of the property, and for the recovery of damages for a direct invasion of such property.  The absolute owner of property, or an officer who has levied on it, and is therefore a special owner, may maintain an action of trespass or trover for an unlawful intermeddling with such property by a stranger; and it is no defence in the latter case that there may be property enough remaining to satisfy the execution.  Not so, however, in a case like this, when the suit is brought, not for a *direct injury* to the property itself, but to recover the *consequential damages* sustained by a judgment and execution creditor, occasioned by the removal of property upon which he had acquired a lien by the levy of his execution.  For example, if a sheriff levy upon property to the value of $300, to satisfy an execution of $100, and a stranger should seize and convert a part of it worth $50, it cannot be doubted that the *officer* might recover the value of the property thus wrongfully taken, in trespass or trover.  But if the plaintiff in the execution should sue an individual to whom the *general owner*, (the defendant in the execution,) had transferred a part of the property subsequent to the levy, for removing it, he must prove that he *necessarily suffered damage by the act* complained of.  That is, that there was not property enough *left* to satisfy his execution.  Thus in the case of *Lane and wife* v. *Hitchcock*, (14 *John.* 213,) it was held that a mortgagee could not recover against one who had diminished the lien of his mortgage by removing a building from the premises bound by the mortgage, unless he could show that he suffered damages as a *necessary*

Marsh v. White.

consequence of the act. And he was required to show, not only that the removal of the building left the premises a scanty security, but that the mortgagor, who was personally bound, was insolvent. In the course of this opinion the court remark upon the case of *Yates* v. *Joyce*, (11 *John.* 140,) and say that in that case the injury was shown to have been the occasion of inevitable damage to the plaintiff, and thus distinguish it from the one then under consideration.

Now, if we apply this principle to the case at bar, we shall see that after the defendants had converted a part of the property bound by the levy, to the payment of other creditors of Cowles, there remained an abundant fund, subject to the execution, and bound by the levy, to satisfy the execution. We must assume this to be so; for the jury have so found the fact to be. And notwithstanding the assignment was fraudulent, nevertheless it operated as a power of attorney from the assignor to apply the property in the payment of his debts. Now, conceding the sale of this property by the defendants on the 10th of May, 1843, to have been a conversion of it, and that the plaintiff had a superior lien upon it, still, if there were enough left to satisfy the plaintiff's execution, and the plaintiff has either released the residue, or lost his lien by his own want of due care, then this action for consequential damages cannot be maintained. Now, independent of any release of this property, it is clear that this plaintiff has lost his lien on the residue by his own gross negligence. Had it not been for his express directions, the constable would either have taken the property into his possession, or would have himself been liable for not doing so. We think, for these reasons, that the verdict was right.

II. *Again ;* Although when a right of action has accrued, a release obtained by fraud, and without consideration, is void; yet we do not think that the constable could maintain an action founded on a right acquired by the levy, after a return of the execution by which he, by order of the plaintiff, *formally released the levy.* This was an *official act,* and must be held to have *subverted* all his rights acquired by the levy, thus *explicitly* and *absolutely abandoned.* . If this be so, it seems to

us that the rights of the plaintiff, which grew out of the levy, are lost, especially when that levy is officially revoked and abandoned by his own positive directions.

III. It has been held by the court in 1 *Denio*, 335, that in a case like the present, no action could be maintained by the *plaintiff* in the execution. We were asked to review this decision, and some authorities were given to us to show that the court in that case had overlooked a class of authorities which would have led them to a different conclusion. Believing that the verdict is right, upon the grounds already stated, and that no injustice has been done by any error of the court or jury, we have not examined the cases referred to, so as to be willing to overrule the decision in question.

New trial denied.

